1  **GARCIA HERNÁNDEZ SAWHNEY, LLP**
   ALBERT A. ERKEL, JR. (SBN 93793)
2    aerkel@ghslaw.com
   NORMA F. FRANKLIN (SBN 266827)
3    nnava@ghslaw.com
   CONOR KENNEDY (SBN 281793)
4    ckennedy@ghslaw.com
   Garcia Hernández Sawhney, LLP
5  330 N. Brand Blvd., Suite 680
   Glendale, California 91203
6  Tel: (213) 347-0210
   Fax: (213) 347-0216
7

8  *Attorneys for Defendant*
   OXNARD SCHOOL DISTRICT
9
                    UNITED STATES DISTRICT COURT
10
                    CENTRAL DISTRICT OF CALIFORNIA
11

12
   I.H., a minor, by and through his          Case No.: 2:19-cv-01997-MWF-MRW
13 guardian ad litem, C.C.,
14         Plaintiff,                          **DEFENDANT OXNARD SCHOOL
                                               DISTRICT'S NOTICE OF MOTION
15              v.                             AND MOTION TO DISMISS THE
                                               SECOND AND THIRD CAUSES OF
16 OXNARD SCHOOL DISTRICT;                     ACTION IN PLAINTIFF'S FIRST
   CASA PACIFICA CENTERS FOR                   AMENDED COMPLAINT;
17 CHLIDREN AND FAMILIES                       MEMORANDUM OF POINTS AND
                                               AUTHORITIES IN SUPPORT
18         Defendants.                         THEREOF**

19                                             **[REQUEST FOR JUDICIAL NOTICE
                                               AND PROPOSED ORDER FILED
20                                             CONCURRENTLY]**

21                                             Date: August 26, 2019
                                               Time: 10:00 A.M.
22                                             Courtroom: Courtroom 5A, First Street
                                               Courthouse
23

24

25

26

27

28

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE MICHAEL W. FITZGERALD, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 12, 2019 at 10:00 AM, or as soon thereafter as the matter may be heard before Courtroom 5A of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Defendant Oxnard School District ("the District") will, and hereby does, move the Court for dismissal of the second and third causes of action in Plaintiff's First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This Motion to Dismiss ("Motion") is brought on the following grounds:

1.     The Court should dismiss Plaintiff's second and third causes of action for violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504") because these claims involve identical issues actually litigated and necessarily decided by the Office of Administrative Hearings ("OAH") in the case *In re Parent on Behalf of Student v. Oxnard School District,* OAH Case No. 2018080844. Accordingly, Plaintiff is precluded from alleging District's violative conduct, either "based on Plaintiff's disability" or with "deliberate indifference" on the part of the District.

2.     In the alternative, Plaintiff's second and third causes of action actually allege that the District deprived Plaintiff of a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities Act ("IDEA"). Specifically, paragraphs ¶¶ 4-7, 11, 14-22, 24-28, 46, 71, 74-75, 82-83, and 86-88 of the FAC allege that the District failed to provide I.H. with an appropriate specialized program to meet his alleged disabilities. Paragraphs ¶ 4, ¶ 35, and 47 of the FAC allege a dispute related to I.H.'s educational placement that, per 20 U.S.C. 1415 (*l*), Plaintiffs must first exhaust with the OAH.

For the foregoing reasons, Defendant respectfully requests dismissal of Plaintiff's second and third causes of action with prejudice.

1    Pursuant to Local Rule 7-3, this Motion is made following the conference of
2    counsel, which took place on June 24, 2019.
3    The Motion is based on this Notice of Motion and Motion, the Memorandum
4    of Points and Authorities, Request for Judicial Notice filed herewith, the pleadings
5    and papers attached thereto, and upon such other matters as may be presented to the
6    Court at the time of the hearing.

7                                    Respectfully Submitted,

8    Dated: July 15, 2019            **GARCIA HERNÁNDEZ SAWHNEY, LLP**

10                                   By: */s/Conor Kennedy*
                                        _____

12                                   Conor Kennedy
                                     *Attorneys for Defendants*
13                                   Oxnard School District

NOTICE OF MOTION AND MOTION TO DISMISS

# TABLE OF CONTENTS

**I.   INTRODUCTION** ................................................................. 1

**II.   STATEMENT OF FACTS** ................................................ 3

A.  OAH Held a Robust Due Process Proceeding, Where the Parties Litigated Identical Fact Issues to Those Alleged in the FAC. ................................ 3

B.  OAH Resolved the Fact Issues Pertinent to Causation under Title II and Section 504 ................................................................. 4

C.  OAH Resolved the Fact Issues Pertinent to Knowledge/Intent under Title II and Section 504 ................................................................. 8

D.  Plaintiff Waived His Right to Request Damages Related to Missing School Caused by the Parties' Dispute Over I.H.'s Placement. ......................... 10

**III.   LEGAL STANDARDS FOR A MOTION TO DISMISS** .......... 12

**IV.   LEGAL ARGUMENT** ................................................... 13

A.  Plaintiff's Title II and Section 504 Causes of Action Should be Dismissed with Prejudice on Grounds of Issue Preclusion. ............................... 13

*(i)   Plaintiff is Precluded From Making Out a Claim For Discrimination "Based on" I.H.'s Disability* ................................................. 15

*(ii)   Plaintiff is Precluded From Making Out a Claim Based on District's "Deliberate Indifference"* ................................................. 16

*(iii)   Plaintiff is Precluded From Making Out a Claim Based on I.H.'s Missed School, Due to a Placement Dispute Between the Parties* ................ 19

B.  In the Alternative, Plaintiff's Title II and Section 504 Claims Should be Dismissed for Failure to Exhaust ................................................. 20

**V.   CONCLUSION** ........................................................... 25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Albino v. Baca*,
  747 F.3d 1162 (9th Cir. 2014) .............................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................12

*Castillo v. City of Los Angeles*
  92 Cal.App.4th 477, 111 Cal.Rptr.2d 870 (2001) ...............................14, 17, 18, 20

*Duvall v. County of Kitsap*,
  260 F.3d 1124 (9th Cir. 2001) .........................................8, 15, 16, 17, 18

*Fry v. Napoleon Community Schools*,
  137 S.Ct. 743, 197 L.Ed.2d 46 (2017) .....................................13, 22, 23

*Hoeft v. Tucson Unified Sch. Dist.*,
  967 F.2d 1298 (9th Cir. 1992) .............................................................22

*Honig v. Doe*,
  484 U.S. 305 (1988) ...........................................................................10

*J.M. v. Francis Howell Sch. Dist.*,
  850 F.3d 944 (8th Cir. 2017) ...............................................................24

*K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*,
  725 F.3d 1088 (9th Cir. 2013) .............................................................13

*Kourtis v. Cameron*,
  419 F.3d 989 (9th Cir. 2005) ...............................................................13

*Lucido v. Superior Court*,
  51 Cal. 3d 335, 272 Cal. Rptr. 767 (1990) ..............................14, 15, 16, 18, 19, 20

*Marrese v. Am. Academy of Orthopaedic Surgeons*,
  470 U.S. 373, 105 S.Ct. 1327 (1985) ...................................................13

*Murray v. Alaska Airlines, Inc.*,
  50 Cal.4th 860, 237 P.3d 565, 114 Cal.Rptr.3d 241 (2010)..................13

*Paul G. v. Monterey Peninsula Unified Sch. Dist.*,
  256 F.Supp.3d 1064 (N.D. Cal 2017)...................................................22

*Pollack v. Regional School Unit 75*,
  886 F.3d 75 (1st Cir. 2018) .................................................................17

*S.B. by and through Kristina B. v. Cal. Dep't of Educ.*,
  327 F. Supp. 3d 1218 n.1 (E.D. Cal. 2018) ................................12, 13, 22, 23, 24

*Schwarz v. United States*,
  234 F.3d 428 (9th Cir. 2000) ...............................................................12

*Tabaddor v. Holder*,
  156 F.Supp.3d 1076 (C.D. Cal. 2015) ...................................................... 13

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................................................. 13

*Updike v. Multnomah County*,
  870 F.3d 939 (9th Cir 2017) .................................................................... 17

*Vinson v. Thomas*,
  288 F.3d 1145 n. 7 (9th Cir. 2002) ......................................................... 15

*Weinreich v. Los Angeles County Metropolitan Transp. Auth.*,
  114 F.3d 976 (9th Cir. 1997) ............................................................ 14, 15

*Younan v. Caruso*,
  51 Cal.App.4th 401, 59 Cal.Rptr.2d 103 (1996) .................. 14, 16, 19, 20

**Statutes**

28 C.F.R. §35.130 .......................................................................................... 22
28 U.S.C. § 1738 ........................................................................................... 13
29 U.S.C. § 794 ............................................................................................. 15
42 U.S.C. § 12132 ......................................................................................... 15
42 U.S.C. § 1415 ........................................................................................... 22

**Treatises**

Restatement (Second) of Judgments § 27 cmt. c (1982) .......................... 18

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       Two alternative legal theories foreclose Plaintiff's second and third causes of

4   action alleged in the First Amended Complaint ("FAC"): (1) the doctrine of issue

5   preclusion and (2) the doctrine of exhaustion of administrative remedies, codified in

6   20 U.S.C. 1415(l). Prior to this action, the California Office of Administrative

7   Hearings ("OAH") adjudicated and resolved in the District's favor the handful of fact

8   issues that are capable of sustaining Plaintiff's second and third causes of action. The

9   Oxnard School District ("the District") requests that the Court dismiss Plaintiff's

10   second and third causes of action with prejudice solely in connection with issue

11   preclusion.

12       In support of the second and third causes of action, the FAC alleges three

13   crucial sets of fact issues, each of which are amenable to preclusion. First, the FAC

14   alleges in ¶¶ 3-5, 14, 16-17, 28-30, 32-34, and 37-38 that the District misapplied

15   emergency safety measures. Plaintiff is foreclosed from relitigating these allegations,

16   because Plaintiff previously raised the same contentions in a due process hearing

17   before the OAH. Once the parties litigated these identical facts, presenting

18   documentary evidence and live witnesses, the OAH necessarily decided and resolved

19   these factual issues in the District's favor.

20       Second, the FAC alleges the District was "deliberately indifferent" to

21   Plaintiff's legal rights, which appears in the FAC as a threadbare recital, FAC ¶76,

22   supported only by the District's alleged failure to provide Plaintiff with a "one on one

23   systemic behavior program" and District's alleged failure to provide accommodations

24   for Plaintiff's autism. FAC ¶¶ 4, 21, 27, 35, 56. In the prior proceeding, Plaintiff raised

25   these identical arguments about the District's knowledge, which the OAH summarily

26   rejected. The OAH determined instead that the nature of Plaintiff's disability was

27   unclear. In so ruling, the OAH rejected Plaintiff's evidence and experts. Those rulings

28

foreclose Plaintiff from relying on identical allegations in the FAC to establish the District knew but ignored how to address his needs.

Finally, the FAC alleges that the District denied Plaintiff a full and meaningful educational program by denying Plaintiff access to a comprehensive educational campus at the beginning of the 2018-2019 school year. However, in a parallel federal action before the Honorable U.S. District Judge Stephen Wilson, Plaintiff's counsel went on the record and waived Plaintiff's right to enforce a "stay put" order (i.e., the order granting Plaintiff the right to remain in his last current placement in the case the parties cannot agree to a new placement). Plaintiff's strategic refusal to seek enforcement of the stay put order does not entitle Plaintiff to the relief sought here in the FAC. In addition, the OAH considered and rejected Plaintiff's attempt to attribute missing school days to the District's conduct by denying all of Plaintiff's requested relief premised on this fact theory.

Ninety days passed after the OAH's resolution of all three of these facts in District's favor, and yet Plaintiff did not take this statutory period to appeal the ALJ's Order. Instead, now that his appeal rights have lapsed, Plaintiff has resorted to filing a brand new federal action advancing the very same factual issues and legal theories the OAH resolved in the District's favor, only now seeking civil remedies. While doubtlessly strategic, Plaintiff's course of action here does not comport with the proper function of a federal complaint; let alone an amended federal complaint.

In the alternative, the District seeks dismissal of the second and third causes of action on the basis of failed exhaustion of administrative remedies. Although Plaintiff attempts to artfully plead the second and third causes of action as violations of the ADA and Section 504, these claims actually allege that the District deprived Plaintiff of a Free and Appropriate Public Education ("FAPE") under the Individuals with Disabilities Act ("IDEA"). Specifically, paragraphs ¶ 16, ¶ 18, ¶ 74, and ¶ 83 of the FAC allege that the District failed to provide I.H. with an appropriate specialized program to meet his alleged disabilities. Paragraphs ¶ 4, ¶ 35, and ¶ 47 of the FAC

allege a dispute related to I.H.'s educational placement that, per 20 U.S.C. 1415(l). Plaintiffs must first exhaust with OAH. Plaintiff's failure to assert these FAPE-based claims with the OAH preclude Plaintiff from first raising them here.

As a matter of law, Plaintiff cannot assert the second and third causes of action in this forum either because the OAH has determined the critical fact issues in the District's favor, or because these claims involve allegations of a denial of FAPE that Plaintiff must first raise with the OAH. The District respectfully requests that the Court dismiss the second and third causes of action with prejudice.

## II.   STATEMENT OF FACTS

### A.   OAH Held a Robust Due Process Proceeding, Where the Parties Litigated Identical Fact Issues to Those Alleged in the FAC.

Plaintiff raised with OAH the handful of fact issues necessary to sustain his second and third causes of action in the FAC. The parties actually litigated these same allegations in the administrative matter *In re Parent on Behalf of Student v. Oxnard School District,* OAH Case No. 2018080844. RJN, Ex. A (Order).

On August 16, 2018, Plaintiff pled four separate "issues" for the OAH to resolve:

> *1. Did Oxnard deny Student a FAPE by failing in its child find duty?*
>
> *2. Did Oxnard deny FAPE by: (a) failing to offer FAPE prior to January 11, 2018; (b) failing to offer FAPE in the IEP dated January 11, 2018; and (c) failing to implement the January 11, 2018 offer of FAPE?*
>
> *3. Did Oxnard deny Student a FAPE by failing to use appropriate behavior interventions and by improper use of restraint and seclusion as a behavior intervention?*
>
> *4. Did Oxnard deny FAPE by failing to comply with certain procedural requirements.*[1]

---

[1] The procedural violations covered by Issue 4 were: (a) failing to make a clear written offer of FAPE in the initial IEP; (b) failing to complete an IEP within 60

RJN, Ex. C, at 2 (Pre-Hearing Conference Order, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844, Administrative Record Pg. (hereinafter "AR") AR 769). Plaintiff did not plead or raise any issue related to a dispute over his educational placement, the District's alleged "failure to supervise" the non-public school Casa Pacifica during his placement there, or the District's alleged knowledge that he was exposed to danger when arranging for the placement. *Id.* He raises these allegations for the first time here. FAC ¶¶ 40, 41, 75.

During a ten-day hearing, the parties fully addressed and "actually litigated" all four issues, including all sub-issues and facts underlying them. Eighteen fact and expert witnesses delivered live testimony. RJN, Ex . I (Witness List, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844, AR 1087-1093). The parties submitted a thousand pages in documentary evidence. RJN, Ex. K (Table of Contents of Administrative Record, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844, AR *iv - x*). At the conclusion of the hearing, the OAH made detailed fact findings and carefully evaluated Plaintiff's legal theories.

**B.**   **OAH Resolved the Fact Issues Pertinent to Causation under Title II and Section 504**

The OAH foreclosed Plaintiff from asserting the allegations contained in paragraphs ¶¶ 3-5, 14, 16-17, 28-30, 32-34, and 37-38 of the FAC to support his theory that the District's conduct constituted discrimination "by reason of" his disability. The OAH already resolved these facts in the District's favor. In effect, Plaintiff is precluded from establishing fact issues essential to this showing.

Specifically, Plaintiff did not prevail on Issue 3 before the OAH (concerning the District's alleged "improper use of restraint and seclusion as a behavior intervention"). To support Issue 3 before the OAH, Plaintiff described the very same

---

days of the initial assessment plan; and (c) failing to include a general education teacher at the May 1, June 7 and July 26, 2018 IEP meetings.

factual occurrences as he alleges in FAC paragraphs ¶¶ 3-5, 14, 16-17, 28-30, 32-34, and 37-38. According to Plaintiff, District personnel began in October of 2018 to "employ physical holds," that he argues were "used for longer than necessary," some lasting "upwards of 20 minutes." RJN, Ex . F, at 10, 16 (Plaintiff's Closing Brief, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844 (hereinafter "Plaintiff's Closing Brief," AR 941, 947). In a "windowless" conference room, the District "provided instruction" to Plaintiff and otherwise increased the use of restraints, "for longer than necessary." RJN, Ex. F, at 15-16 (Plaintiff's Closing Brief, AR 946-947). District "confined [I.H.] to the hallway," in another incident. RJN, Ex. F, at 16 (Plaintiff's Closing Brief, AR 947). District locked I.H. "inside a bicycle cage," RJN, Ex. B, at 9 ¶ 29 (Plaintiff's Due Process Complaint, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844 (hereinafter, "Plaintiff's Due Process Complaint," AR 9), and allegedly "prevented [his] Parent from picking [I.H.] up or seeing him for 10 minutes after school was out." RJN, Ex. F, at 20 (Plaintiff's Closing Brief, AR 951). During one such incident, bean bags were "stacked around [I.H.]." *Id.* Plaintiff's OAH closing brief attached a chart detailing the safety holds administered. RJN, Ex. F, at 61-74 (Plaintiff's Closing Brief, AR 991-1004).

Plaintiff argued before the OAH that these measures unlawfully interfered with "meaningful access to his public right to education." RJN, Ex. F, at 43-45 (Plaintiff's Closing Brief, AR 974-976). Per his allegations, the safety measures served "as a substitute for systematic behavior intervention." RJN, Ex. F, at 47 (Plaintiff's Closing Brief, AR 978) (emphasis added). The District "confined [I.H.] to the hallways, *in lieu of* any systematic behavior interventions" to "humiliate and embarrass" Plaintiff. RJN, Ex. B, at 25 ¶ 111(Plaintiff's Due Process Complaint, AR 25). Plaintiff's closing brief prominently recited an array of inapposite state laws to imply the District designed its safety measures to "abuse" and "ridicule" him – even to deny him

"human dignity and personal privacy." RJN, Ex. F, at 43-45 (Plaintiff's Closing Brief, AR 974-976).

Administrative Law Judge Robert G. Martin presided over the due process hearing and considered each Plaintiff's discrete predicates for potential IDEA violations, but he simply did not share Plaintiff's view. ALJ Martin's Order ruled clearly and unambiguously that the District's safety measures did not run afoul of the law. In so deciding, ALJ Martin held the safety holds were "in accordance with Oxnard policy." RJN, Ex. A, at 32, ¶ 159 (Order, AR 2110). Specifically, ALJ Martin found the holds were "all NCPI[2] holds," and "were administered by staff trained in their use." *Id.* ALJ Martin also found that "Oxnard used emergency physical interventions" only "when Student presented a danger to himself or others." RJN, Ex A, at 49, ¶ 52 (Order, AR 2127). ALJ Martin repeatedly acknowledged the safety measures were lawfully responsive to the harm caused by Plaintiff's behavior and in proportion to the extreme conduct at issue: "Student's behavior was extreme, violent, unpredictable and uncontrollable." RJN, Ex. A, at 2 (Order, AR 2080). Indeed, the Order stressed that: "Student re-escalated every time he appeared calm." RJN, Ex. A, at 23 ¶ 109 (Order, AR 2101). The seclusions "were not used for longer than necessary to protect Student and others from harm" and "did not exceed what was reasonable and necessary under the circumstances." RJN, Ex. A, at 49, ¶ 52 (Order, AR 2127); *See* FAC ¶15 (In I.H.'s first and second grade years, repeated instances of "throwing chairs," "pulling objects from walls," "destruction of property," and "running out of class."), ¶ 28 ("hitting, screaming, biting, kicking . . . "). District personnel applied these safety measures to protect against the harmful consequences of I.H.'s actions, not due to his alleged autism. *Id.* Ultimately, ALJ Martin determined, after a full adjudication of this issue, that the District's safety concerns were not pretextual; they were real. *Id.*

---

[2] The term "NCPI holds" refer to Nonviolent Crisis Prevention Intervention holds.

As to the alleged "caging" in paragraphs ¶ 24 and ¶ 33 of the FAC, ALJ Martin rejected Plaintiff's harrowing implication that the District utilized *cage*s designed for human detention.[3] Specifically, ALJ Martin determined that:

> [o]n January 25, 2018, Student was observed in the school's bicycle cage, trying to remove another student's scooter. When approached by Ms. Perez, Student escalated to a violent tantrum, during which he struck Ms. Perez three times in the face with rocks, grabbed his paraeducator' s buttocks, lifted her blouse, tried to grab her cell phone, chased and hit her when she began to walk away. Student chased Ms. Perez around the bicycle rack, trying to bite her arms and hands, while screaming extremely derogatory gender expletives and threats.

RJN, Ex. A, at 34 (Order, AR 2112). In essence, Plaintiff entered a bicycle area voluntarily and then initiated violence, thus necessitating his confinement in that area. The resulting incident was not actionable. *Id.*

ALJ Martin flatly rejected Plaintiff's repeated insistence on a causal link between the District's conduct and his behavioral outbursts. The ALJ's Order instead demonstrated Plaintiff's FAC has this backwards: "*Student's behaviors* required properly trained Oxnard staff to use the temporary application of restraint for short periods of time to protect Student and others from injury and were not applied for longer than necessary." RJN, Ex. A, at 49 ¶ 52 (Order, AR 2127) (emphasis added).

These fact findings, coupled with the OAH's outright rejection of any legal basis for Issue 3, forecloses Plaintiff from alleging in the FAC that the District's safety measures constitute discrimination "by reason of" Plaintiff's disability. *See* FAC ¶¶ 3-5, 14, 16-17, 28-30, 32-34, and 37-38. The measures were clearly deployed solely for safety purposes. RJN, Ex. A, at 49 ¶ 52 (Order, AR 2127). This ruling of ALJ Martin's is dispositive of both Plaintiff's second and third causes of action. *Id.*

---

[3] Plaintiff inexplicably employs the plural "cage*s*" in the operative complaint, when I.H. voluntarily entered only one, single bicycle area (*i.e.,* and from there violently set upon a school administrator). FAC, Page 7 ¶24.

### C. OAH Resolved the Fact Issues Pertinent to Knowledge/Intent under Title II and Section 504

Plaintiff is foreclosed from alleging the District's challenged conduct rose to the level of "deliberate indifference," and on that basis he fails to state a *prima facie* cause of action under Title II or Section 504. *Duvall v. County of Kitsap,* 260 F.3d 1124, 1138 (9th Cir. 2001). To satisfy this necessary element of Plaintiff's second and third causes of action, Plaintiff relies on a small set of discrete fact issues to impute knowledge of I.H.'s legal rights on the District – *i.e.,* I.H.'s rights based on his disability and on his needs – as well as the District's deliberate indifference to those rights. FAC ¶¶ 4, 21, 27, 35, 56 and 76. The OAH preclusively resolved the same fact issues in the District's favor, thus foreclosing Plaintiff from levying these contentions here. Plaintiff tried and failed to impute knowledge to the District before the OAH. Plaintiff's closing brief before the OAH features this fact issue prominently, including an underlined full-paragraph that states: "District's behaviorist admitted on the stand that by this initial IEP in January of 2018 she already believed that [I.H.] needed an intensive one on one program that utilized Applied Behavior Analysis services to address his behavior needs." RJN, Ex. F, at 14 (Plaintiff's Closing Brief, AR 945).

ALJ Martin readily adopted District's closing brief argument instead: that this testimony evidenced the District's determination that non-disability-related behavior still warrants intervention. RJN, Ex. A, at 17, ¶ 78 (Order, AR 2095). While ALJ Martin did in fact conclude that the Behaviorist recommended "consistent, intensive, individualized support," as "absolutely necessary" to address Student's behaviors to ensure he could learn, behavior in and of itself is not a disability, *id.*; moreover it is not a disability Plaintiff alleges in the FAC. Instead, the ALJ's legal conclusion correctly reflected that Plaintiff's behavior appeared to the Behaviorist to be "under his control" and "willful," and did not appear to be "emotionally based," which is exactly what the District argued in its closing brief. RJN, Ex. G, at 15 (Defendant's Closing Brief, OAH matter *In re Parent on Behalf of Student v. Oxnard School*

*District,* Case No. 2018080844 (hereinafter "Defendant's Closing Brief," AR 1026) (citing RJN, Ex. G. at "S_181" ("Student's Exhibit S-64: 1/10/2018 Assessment - Multi-Disciplinary Team Report," OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844, AR 1264).

Plaintiff also attempted to establish the District knew or should have known he allegedly has autism. Plaintiff's due process complaint devoted no fewer than three full pages to this fact issue. RJN, Ex. B, at 14-16 (Student's Due Process Complaint, AR 14-16). This was Plaintiff's central frame at due process. Plaintiff counsel's opening statement began: "[w]e are here today to talk about the needs of I.H. And he is a very young child with autism." RJN, Ex. D, at 18 (Hearing Transcript of Opening Statement, OAH matter *In re Parent on Behalf of Student v. Oxnard School District,* Case No. 2018080844, at AR 2181). Plaintiff's closing brief requested for ALJ Martin to "[o]rder the District to find [I.H.] eligible as a student with autism based on the finding of Dr. Betty Jo Freeman's report, testimony and supporting information" RJN, Ex.  F, at 53-54 (Student's Closing Brief, AR 984-985).

ALJ Martin instead ruled I.H.'s disability was not known during the challenged period. RJN, Ex. A, at 52, ¶ 5 (Order, AR 2130). The Order stated: "[t]he nature of Student's unique needs remains unclear." *Id.*

ALJ Martin made key credibility determinations about Dr. Freeman's autism assessment and rejected it wholesale. ALJ Martin found at the outset that "Student did not present as obviously autistic." RJN, Ex. A, at 28 ¶ 139 (Order, AR 2106). He observed that Dr. Freeman was "somewhat vague as to the exact basis for her diagnosis." RJN, Ex. A, at 30 ¶145 (Order, AR 2108). ALJ Martin then determined Dr. Freeman's diagnosis was inherently flawed and contrary to multiple witnesses' observations of Plaintiff's conduct. RJN, Ex. A, at 29-30 ¶¶ 140 and 147 (Order, AR 2107-2108).[4]

---

[4] The District does not contest that I.H. is a student with a disability.

Thus, the District's alleged knowledge of Plaintiff's disability simply cannot serve as a basis in the FAC to sustain Plaintiff's second and third causes of action. FAC ¶¶ 4, 21, 27, 35, 56 and 76. Despite the misleading impression in the FAC that the District knew of Plaintiff's needs and acted with a measure of deliberateness to ignore them, ALJ Martin affirmatively ruled that Plaintiff's unique needs were unclear during the challenged period. By extension, the District could not have known what Plaintiff required and therefore could not have deliberately ignored his needs.

### D.  Plaintiff Waived His Right to Request Damages Related to Missing School Caused by the Parties' Dispute Over I.H.'s Placement.

Plaintiff cannot sustain the FAC's second and third causes of action on the basis that he did not receive educational programming, a result he attributes in the FAC to the District's challenged conduct. FAC ¶¶ 47 and 53. In the FAC, Plaintiff's argument to this effect relies on a small set of discrete issues that Plaintiff waived in the underlying OAH matter, as well as in the parallel federal action *Oxnard School District v. I.H.*, 2:18-cv-07357-SVW-AS (hereinafter, "the Federal Action"). *Id.*

Plaintiff secured a "stay put" order under 20 U.S.C. 1415(*l*) yet failed to enforce it through to the end of due process, pending the resolution of due process. Through this "stay put" order, Plaintiff sought re-entry into a comprehensive educational campus notwithstanding his uncontrollable violent outbursts against fellow students and District staff. In response to Plaintiff's request for a "stay put" order, the District filed the Federal Action to enjoin Plaintiff *vis-à-vis* a federal *Honig* injunction.[5] On October 1, 2018, Plaintiff's counsel filed an opposition and declaration in the Federal Action indicating Plaintiff would not enforce the stay put order. RJN, Ex. L. Relying on Plaintiff's assurances, U.S. District Court Judge Stephen Wilson ruled that the District "has not made an adequate showing that there is a likelihood that [I.H.] will

---

[5] Named for *Honig v. Doe*, a 1988 U.S. Supreme Court case authorizing a public school district to remove a special education student from school grounds where doing so would prevent substantial risk of injury, 484 U.S. 305 (1988).

MEMORANDUM OF POINTS AND AUTHORITIES

in fact attempt to return to the school," observing "the issue likely will be resolved in the near future, as the OAH is expected to render a decision within the next several weeks." RJN, Ex. M, at 2. Judge Wilson dismissed the District's Federal Action seeking injunctive relief against Plaintiff, without prejudice. *Id.* at 2.

On this basis, Plaintiff here seeks remedies for an alleged claim he previously waived. In the FAC, Plaintiff alleges that " . . . the District refused to allow I.H. back at Cesar Chavez. He was to return on the first day of school, but the District refused to let him return, telling his counsel that if he came to campus he would be turned away." FAC ¶ 47.[6]

Plaintiff's due process complaint advanced identical allegations: "On August 14, 2018 the District's counsel notified [I.H.'s] counsel that if [I.H.] went to his home school on the first day of school he would be turned away. [I.H.] has no placement as of today." RJN, Ex. B, at 17 ¶ 68 (Student's Due Process Complaint, AR 17).

In his Order, ALJ Martin observed: "Student is currently receiving no education . . . " RJN, Ex. A, at Pg. 52 ¶ 5 (Order, AR 2130). In a footnote, ALJ Martin took judicial notice of the fact that, notwithstanding the administrative "stay put" order, "[s]tudent does not seek placement at Chavez Elementary School as a remedy in this matter." RJN, Ex. A, at 46 ¶ 38 n.6 (Order, AR 2124). ALJ Martin did not attribute Plaintiff's decision to the District's actions. *Id.*

Conspicuously absent from ALJ Martin's Order is any requirement to provide compensatory education tied specifically to the parties' disagreement over placement pending resolution of the due process matter. OAH refused to remedy an alleged harm arising from Plaintiff's own failure to enforce a stay put order while also refusing to cooperate with District's placement efforts. RJN, Ex. A, at 33 ¶¶ 153-157 (Order, AR

---

[6] In his current placement, Plaintiff remains separated from the general education campus. Plaintiff alleges in the FAC that his current program "has been a success, with minimal behavior issues, and has allowed I.H. to participate in school for the first time in a very long time." FAC, Pg. 13 ¶57.

2111). So as to avoid any doubt about Plaintiff's sought relief, the Order concludes in sweeping language: "All other relief sought by Student is denied." RJN, Ex. A, at 54 (Order, AR 5056). Plaintiff reports "minimal behavior issues" in his current placement, despite the fact that his stay put order remains unenforced. *Supra* note 6.

Plaintiff is thus foreclosed from attributing lost educational programming to the District as a basis for his second and third cause of action in the FAC. FAC ¶¶ 47 and 53. Plaintiff declined to enforce the "stay put" order, waiving the right to do so, and he agreed with the District that enforcement of "stay put" should not occur. RJN, Ex A, at 46 ¶38 n.6 (Order, AR 2124). Plaintiff cannot now seek a new basis for liability against the District. RJN, Ex. A, at 54 (Order, AR 2132).

## III.   LEGAL STANDARDS FOR A MOTION TO DISMISS

This Court may grant a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to the extent Plaintiff lacks a cognizable legal theory or fails to proffer "sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)) Plausibility requires that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must "accept as true all of the allegations continue in a complaint," but need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . ." *Id.* at 678. Moreover, the Court need not accept as true any alleged facts that contradict matters that may be judicially noticed. *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000).

Issue preclusion may be properly raised in a Rule 12 motion and accompanied by a request that the Court take judicial notice of documents "issued by the OAH, filed with the OAH, or issued by a court." *See S.B. by and through Kristina B. v. Cal. Dep't of Educ.*, 327 F. Supp. 3d 1218, 1228 n.1 (E.D. Cal. 2018) (taking judicial notice of an amended due process complaint, a published decision, various motions

to dismiss, and an order granting dismissal); *R.F. by and through S. Frankel v, Delano Union Sch. Dist.* 224 F.Supp.3d 979, 983 (E.D. Cal. 2016) (taking judicial notice of an administrative record of a proceeding before the Office of Administrative hearings). In addition, a defendant may challenge a failure to exhaust administrative remedies under Rule 12(b)(6) when the failure to exhaust is clear from the "face of the complaint." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014); *See also Tabaddor v. Holder*, 156 F.Supp.3d 1076, 1080 (C.D. Cal. 2015); *S.B.*, 327 F.Supp.3d at 1228 n.1.

## IV.   LEGAL ARGUMENT

### A.   Plaintiff's Title II and Section 504 Causes of Action Should be Dismissed with Prejudice on Grounds of Issue Preclusion

The Ninth Circuit has recognized issue preclusion applies in "cases raising both IDEA and Title II claims where the IDEA administrative appeals process has functionally adjudicated some or all questions relevant to a Title II claim in a way that precludes re-litigation." *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1101 (9th Cir. 2013), overturned on other grounds by *Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 197 L.Ed.2d 46 (2017). The doctrine "prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding." *Kourtis v. Cameron*, 419 F.3d 989, 994 (9th Cir. 2005) abrogated on other grounds by *Taylor v. Sturgell*, 553 U.S. 880 (2008). The preclusive effect of state judicial proceedings "[is given] the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken": here, resulting in the application of California issue preclusion law. *See Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327 (1985) (quoting The Full Faith and Credit Act, 28 U.S.C. § 1738). Decisions issued by agencies acting in a judicial capacity are entitled to the same preclusive effect as state courts. *Murray v. Alaska Airlines, Inc*., 50 Cal.4th 860, 237 P.3d 565, 114 Cal.Rptr.3d 241 (2010) ("It

1  is settled that the doctrine of collateral estoppel or issue preclusion is applicable to

2  final decisions of administrative agencies acting in a judicial or quasi-judicial

3  capacity."); *accord Castillo v. City of Los Angeles* 92 Cal.App.4th 477, 482, 111

4  Cal.Rptr.2d 870 (2001).

5      For preclusion to apply, "[f]irst, the issue sought to be precluded from re-

6  litigation must be identical to that decided in a former proceeding. Second, this issue

7  must have been actually litigated in the former proceeding. Third, it must have been

8  necessarily decided in the former proceeding. Fourth, the decision in the former

9  proceeding must be final and on the merits. Finally, the party against whom preclusion

10  is sought must be the same as, or in privity with, the party to the former proceeding."

11  *Lucido v. Superior Court*, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767 (1990). Alongside

12  these threshold requirements, preclusion may only be applied to promote the public

13  policies embodied by the doctrine, namely, to promote judicial economy by

14  minimizing repetitive litigation, to prevent inconsistent judgments which undermine

15  integrity of judicial system, and to protect against vexatious litigation. *Younan v.*

16  *Caruso*, 51 Cal.App.4th 401, 406-7, 59 Cal.Rptr.2d 103 (1996) ("collateral estoppel

17  prevents the retrial of issues in a second action already tried in a previous action.").

18      Preclusion forecloses Plaintiff from alleging the limited subset of facts that are

19  capable of sustaining a *prima facie* claim under Title II or Section 504. To sustain a

20  Title II cause of action, Plaintiff must allege: (1) he has a qualified disability; (2) he

21  was "either excluded from participation in or denied the benefits of a public entity's

22  services, programs, or activities, or  . . . otherwise discriminated against" by the

23  District; and (3) "such exclusion, denial of benefits, or discrimination was by reason

24  of" his disability. *Weinreich v. Los Angeles County Metropolitan Transp. Auth*., 114

25  F.3d 976, 978 (9th Cir. 1997). To sustain a Section 504 claim, Plaintiff must allege

26  that: (1) he is an individual with a disability; (2) he was qualified under the statute to

27  receive the benefit; (3) the District "denied the benefits of the program solely by

28

reason of" his disability; and (4) the District "receives federal financial assistance." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001).[7]

(i)   *Plaintiff is Precluded From Making Out a Claim For Discrimination "Based on" I.H.'s Disability*

Few of the facts alleged in the FAC are capable of sustaining a *prima facie* case to satisfy "causation." *See* 42 U.S.C. § 12132; 29 U.S.C. § 794 (each requiring a plaintiff to establish discrimination "by reason of" plaintiff's disability). That entire subset is foreclosed here. OAH resolved identical fact issues embedded in "Issue 3." *Lucido*, 51 Cal. 3d at 341; *See* 42 U.S.C. § 12132; 29 U.S.C. § 794; *Weinreich*, 114 F.3d at 978-979. In effect, preclusion is proper. *Id*.

To survive dismissal, Plaintiff's second and third causes of action allege the District engaged in actionable conduct "by reason of" or "solely by reason of" Plaintiff's disability. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794; *Weinreich*, 114 F.3d at 978-979 (stating Plaintiff must allege discrimination "based on the fact or perception that he has a disability"); *Duvall*, 260 F.3d at 1135.

This showing has been identically "at stake in the two proceedings," both here and before the OAH. *See Lucido*, 51 Cal.3d at 342. ALJ Martin ruled District's safety measures were not used to discriminate or exclude. RJN, Ex. A, at 2, 23 ¶109, 32 ¶159, Pg. 49 ¶52 (Order, AR 2080, AR 2110, AR 2127). Rather, the District deployed them due to safety concerns posed by Plaintiff's violent behavior. RJN, Ex. A, at 49 ¶52 (Order, AR 2127). Despite this, the FAC improperly asserts the same failed contentions. As such, "identity" is satisfied. *Lucido*, 51 Cal.3d at 342 ("The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same").

_____

[7] Pleading standards are substantially the same under Title II and under Section 504, so courts analyze them in parallel. *Vinson v. Thomas*, 288 F.3d 1145, 1152 n. 7 (9th Cir. 2002) ("there is no significant difference in the analysis of rights and obligations created by the Rehabilitation Act and the ADA").

1    Turning to the remaining threshold elements, each one favors preclusion. These

2 fact issues were expressly addressed by the OAH, satisfying the second preclusion

3 element, which tests whether the prior adjudicative body properly heard evidence,

4 witnesses, and argument regarding the issue in the prior proceeding. *Lucido*, 51 Cal.3d

5 at 341 ("The parties each presented evidence and witnesses in support of their

6 positions, and certainly had the opportunity to present full cases"). ALJ Martin

7 "necessarily decided" these issues to properly resolve Issue 3. *Id.* at 341-342. The

8 OAH ruling was indeed "final and on the merits," and no appeal was taken. As to the

9 fifth threshold element, the litigants before this Court are identical to the OAH action

10 and are therefore quite obviously in "privity." Thus, all five threshold showings are

11 met. *Id.*

12    With all five preclusion elements met, this Court's preclusion inquiry

13 concludes by determining as to each precluded issue whether preclusion is consistent

14 with the policies underlying the doctrine. Preclusion here will protect the integrity of

15 the judicial system by giving credit and effect to the OAH's ruling on Issue 3, rather

16 than allowing Plaintiff to undermine the integrity of the judicial system by re-

17 litigating a settled question. *Younan*, 51 Cal.App.4th at 413.

18    (ii)    *Plaintiff is Precluded From Making Out a Claim Based on District's*

19       *"Deliberate Indifference"*

20    Only a small set of FAC allegations is capable of imputing adequate knowledge

21 and deliberate indifference to sustain a *prima facie* case under Plaintiff's second and

22 third causes of action. FAC ¶¶ 4, 21, 27, 35, 56 and 76. This subset of facts is

23 foreclosed, like the subset discussed above, because OAH resolved "identical" fact

24 issues in a prior proceeding. *Lucido*, 51 Cal. 3d at 341-342. OAH's ruling leaves no

25 factual basis to meet the knowledge element under either Title II or Section 504.

26    The knowledge element is exacting. To sustain a cause of action under either

27 statute for damages, the actionable conduct must rise to the level of "deliberate

28 indifference" toward I.H.'s right to access a free public education. *Duvall,* 260 F.3d

at 1139 ("a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness"). This showing requires District's "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Updike v. Multnomah County*, 870 F.3d 939, 950-951 (9th Cir 2017); *Duvall,* 260 F.3d at 1139. Allegations of negligence or "bureaucratic slippage" are insufficient. *Duvall*, 260 F.3d at 1139-40.

An agency's determination of fact issues is entitled to preclusive effect – to the same extent as the agency's legal conclusions – so long as "identical factual allegations are at stake in the two proceedings." *See Castillo,* 92 Cal.App.4th at 481-482 (citations and internal quotations omitted).[8] The First Circuit's decision in *Pollack* properly applied preclusion law to the special education context. *Pollack v. Regional School Unit 75*, 886 F.3d 75 (1st Cir. 2018). Per *Pollack*: "issue preclusion applies not only to determinations of law, such as whether the IDEA or the ADA has

---

[8] *Castillo v. City of L.A.* is a useful illustration of this point of law, 92 Cal.App.4th 477. The Court not only reaffirmed the preclusive effect of a prior proceeding on subsequent suits, but it also confirmed preclusion is proper in a subsequent federal suit based on a party's *failure to raise and exhaust* issues in a former administrative proceeding. *Castillo* involved an appeal of employment dismissal from the City of Los Angeles, which the presiding examiner on the Los Angeles County Civil Service Commission denied. Plaintiff subsequently appealed, and the Superior Court affirmed denial. He filed a wrongful discharge claim with the California Department of Fair Employment and Housing ("DFEH") (for preclusion purposes, plaintiff's second action), alleging disparate treatment by Los Angeles during his employment. DFEH granted dismissal on grounds of preclusion, and the Second Appellate District affirmed. In ruling plaintiff's firing was proper, the Second Appellate District held that the Commission examiner *necessarily*, *albeit implicitly* found the dismissal *was not a pretext for discrimination*, even though the plaintiff never expressly raised pretext before the Commission. Instead, the Court ruled this was "necessarily decided." *Id.* at 482 ("if the hearing examiner were to have found that the reasons for discharge were merely a pretext for discrimination, she would not have found the discharge was appropriate").

been violated, but also to determinations of fact made in resolving issues of law." *Id.*
at 85 (citing Restatement (Second) of Judgments § 27 cmt. c (1982)).

In the FAC, Plaintiff bases "deliberate indifference" on two factual assertions
susceptible to issue preclusion. FAC ¶¶ 4, 21, 27, 35, 56, 76. The first assertion is that
the District knew of Plaintiff's disability as of January of 2018. FAC ¶¶ 4, 56. This is
premised on the notion that Plaintiff's "needs" correspond to a disability, as Plaintiff
must establish to sustain his second and third cause of action. Plaintiff specifically
alleges the District knew of his autism, an allegation that is front and center in the
FAC. FAC ¶¶ 3, 46. These two assertions are Plaintiff's sole bases for "deliberative
indifference" to sustain the second and third causes of action in the FAC. *See Duvall*,
260 F.2d at 1139-40. Without them, Plaintiff's allegations supporting deliberate
indifference are otherwise threadbare, warranting dismissal. *See Iqbal*, 556 U.S. at
678.

Issue "identity" is met with respect to both assertions, because Plaintiff sought
and failed to convince the OAH of "identical" fact issues. *See Lucido*, 51 Cal. 3d 335;
*Castillo*, 92 Cal.App.4th 477. Plaintiff's OAH closing brief prominently featured both
factual issues, in an underlined full paragraph. RJN, Ex. F, at 14 (Plaintiff's Closing
Brief, AR 945). In light of Plaintiff's emphasis, it is safe to say his argument failed
on the merits. ALJ Martin affirmatively determined Plaintiff's disability and unique
needs were not known during the period of challenged conduct. RJN, Ex. A, at 52 ¶
5 (Order, AR 2130). The ALJ's Order entirely discredited Plaintiff's autism expert.
RJN, Ex. A, at 28 ¶139, 29 ¶140, 30 ¶145 (Order, AR 2106-2108). The ALJ's ruling
resolved that the District did not know of I.H.'s needs, which forecloses Plaintiff from
showing District's "deliberateness." *See* FAC ¶¶ 4, 21, 27, 35, 56, 76. This fact issue
in the FAC is "identical" to that resolved by the OAH. *See Lucido*, 51 Cal. 3d at 341-
342.

The remaining elements of preclusion favor its application here as well. The
"actually litigated" prong is straightforward, as the OAH record demonstrates the

parties litigated this same issue. *Lucido*, 51 Cal. 3d at 341-342. Satisfying the third prong, ALJ Martin "necessarily decided" the same issues. Courts treat the "necessarily decided" prong as a low bar. *Id.* at 342. They require "only that the issue [was] not . . . 'entirely unnecessary' to the judgment in the initial proceeding." *Id.* ALJ Martin's Order ruled on this issue as an aspect of the District's FAPE obligations, and it was therefore necessary to the judgment in the initial proceeding. RJN, Ex. A, at 30 ¶ 147 (Order, AR 2108). Elements four and five are not reasonably in dispute, as the ruling was final and the parties were identical. *See id.*

Preclusion of these fact issues is consistent with the policies underlying the doctrine. *Younan*, 51 Cal.App.4th 401. Foreclosing Plaintiff on grounds of preclusion will minimize repetition of two of the most prominently featured fact issues Plaintiff advanced before the OAH. After the parties rigorously contested these fact issues, ALJ Martin carefully delineated what Plaintiff got right and did not get right. It would make little sense for this Court and the parties to repeat the same task. *Id.* at 413 (applying preclusion where "the spectre of inconsistent verdicts" would risk "casting great doubt on the fact-finding process" by the prior tribunal).

### (iii) *Plaintiff is Precluded From Making Out a Claim Based on I.H.'s Missed School, Due to a Placement Dispute Between the Parties*

Plaintiff secured a "stay put" order under 20 U.S.C. 1415(*l*) yet failed to enforce it. After Plaintiff raised this matter with the OAH and sought OAH's judicial notice of the proceedings related thereto, OAH granted judicial notice yet determined the missed educational program was not independently actionable, denying Plaintiff's sought relief. RJN, Ex. A, at 33 ¶¶ 153-157, 46 ¶ 38 n.6, 54 (Order, AR 2111, AR 2124, AR 2132). This determination forecloses Plaintiff from re-litigating the same issue here.

In the FAC, Plaintiff alleges that " . . . the District refused to allow I.H. back at Cesar Chavez. He was to return on the first day of school, but the District refused to let him return, telling his counsel that if he came to campus he would be turned away."

(FAC ¶ 47.) Plaintiff's due process complaint advanced identical allegations. The two fact issues are therefore "identical." *Lucido*, 51 Cal. 3d at 341-342.

Notably absent from ALJ Martin's Order is any requirement to provide compensatory education tied specifically to the placement dispute. RJN, Ex. A, at 51-54 (Order, AR 2129-2132). In essence, OAH refused to remedy the alleged harm arising from Plaintiff's own failure to enforce a stay put order while also refusing to cooperate with District's placement efforts. *See id.;* RJN, Ex. A, at 31-32 ¶¶ 153-157 (Order, AR 2109-2110). This "identical" issue was therefore "at stake," and Plaintiff's failure to continue to litigate the point on appeal should not work in Plaintiff's favor here. *See Castillo,* 92 Cal.App.4th at 481-482. Identity is thus met. *Id.*

The remaining elements favor preclusion. Plaintiff's closing brief shows the issue was "actually litigated." *Castillo*, 92 Cal.App.4th at 482 ("The second *Lucido* requirement is that this issue was actually litigated in the former proceeding. []An issue is actually litigated [w]hen [it] is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined . . . ") (citations and internal quotations omitted). ALJ Martin "necessarily decided" to deny Plaintiff's sought remedy. *Id.* at 482. Elements four and five are beyond dispute.

Preclusion is consistent with the policies underlying the doctrine. *Younan*, 51 Cal.App.4th at 413-414. Preclusion here will protect against repetitive litigation as a vexatious litigation tactic, as Plaintiff's missed educational programming stems in part from his failure to enforce stay put while also refusing cooperation with District's placement efforts. *Id.* (upholding preclusion based upon the "important collateral estoppel policy of judicial economy by eliminating repetitive litigation").

The District therefore respectfully requests that this Court dismiss Plaintiff's second and third causes of action.

## B.    In the Alternative, Plaintiff's Title II and Section 504 Claims Should be Dismissed for Failure to Exhaust

Plaintiff's Title II and Section 504 causes of action actually allege a deprivation of FAPE and, per the IDEA, must first be exhausted with the OAH**.** *See e.g.*, FAC ¶ 16 (alleging deprivation of an education program), ¶ 18 (alleging failure to address disability affecting Plaintiff's learning), ¶ 74 (basing Title II cause of action on District's obligation to accommodate Plaintiff's need "in order to enjoy meaningful access to the benefits of a public education"), and ¶ 83 (premising Section 504 cause of action on the obligation that "schools are required to provide a Free Appropriate Public Education under Section 504.")  These defects in Plaintiff's FAC are apparent from the face of the complaint, as supplemented by judicially noticeable materials from the prior OAH proceeding.

Plaintiff's failure to exhaust IDEA administrative remedies warrants dismissal. The FAPE-based theories under which Plaintiff states his second and third causes of action must be dismissed, and Plaintiff must exhaust them at the administrative level before returning to this Court, per 20 U.S.C. 1415(*l*).

The text of Section 1415(*l*) of the IDEA addresses that Act's interplay with other statutory remedies under the ADA and the Rehabilitation Act, and it contains the following exhaustion requirement:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.*

20 U.S.C. § 1415(*l*) (emphasis added). This language makes clear Plaintiff cannot sustain any legal theories supporting his Title II or Section 504 causes of action that are subject to IDEA's exhaustion requirement, unless Plaintiff first exhausts those theories. Congress codified this requirement because it "allows for the exercise of discretion and educational expertise by state and local agencies, affords full

exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children." *Hoeft v. Tucson Unified Sch. Dist*., 967 F.2d 1298, 1303 (9th Cir. 1992) (citations omitted).

Plaintiff predicates these causes of action on four separate FAPE-based theories: (1) unlawful failure to provide "reasonable accommodation" as that phrase is given meaning in 28 C.F.R. §35.130(b)(7); (2) unlawful provision of programs that is "not equal to those provided to others" in contravention of 28 C.F.R. 35.130(b)(1)(iii); (3) unlawful denial of "the opportunity to participate" in such a program thus infringing the same regulation subsection; and (4) unlawful failure to administer such program "in the most integrated setting appropriate," in 28 C.F.R. §35.130(d). FAC ¶ 71.

Plaintiff adds two standalone legal theories in the body of the FAC first, for "Failure to Supervise" and second, for subjecting I.H. to an unsafe environment by placing him in Casa Pacifica. FAC ¶¶ 5, 38, 40-41, 75. Plaintiff could have raised these same standalone claims before the OAH in the first instance and did not. RJN, Ex. C, at 2 (Pre-Hearing Conference Order, AR 769).

To analyze the crux of Plaintiff's theories of redress, this Court should apply the United States Supreme Court's two-part "gravamen" test as set forth in *Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017); *Paul G. v. Monterey Peninsula Unified Sch. Dist.*, 256 F.Supp.3d 1064 (N.D. Cal 2017) (citing and applying *Fry*); *S.B.*, 327 F.Supp.3d at 1228 n.1. The Supreme Court granted certiorari in *Fry* "to address the confusion in the courts of appeals as to the scope of 42 U.S.C. § 1415(*l*)'s exhaustion requirement." *Fry*, 137 S.Ct. at 752. *Fry* held that 20 U.S.C. 1415(*l*) "requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Id.* at 755.

MEMORANDUM OF POINTS AND AUTHORITIES

1    Plaintiff's legal theories supporting both causes of action fail the two-part *Fry*

2    test: (1) "could the claim be brought if the alleged conduct occurred at a public facility

3    that was not a school?" and (2) "could an adult, such as a visitor or employee, have

4    pressed essentially the same grievance?"  *Id*. at 756. The *Fry* Court observed that

5    "prior pursuit of the IDEA's administrative remedies will often provide strong

6    evidence that the substance of plaintiff's claim concerns the denial of a FAPE, even

7    if the complaint never explicitly uses that term." *Id.* at 757.

8    Applying *Fry*, the FAC invokes the phrase "disability-based discrimination"

9    but seeks to vindicate the substance of the IDEA's core guarantees of meaningful

10   educational access. FAC ¶¶ 16, 18, 74, 83. The crux or "gravamen" of all Plaintiff's

11   legal theories is denial of FAPE. See *S.B*., 327 F. Supp. 3d at 1253 ("Pursuant to Fry,

12   the gravamen of Plaintiffs' RA and ADA claims is a denial of FAPE"). Surveying the

13   entirety of the FAC, the causes of action and allegations supporting them "are pled in

14   a formulaic manner, incorporating by reference all the IDEA allegations regarding

15   denial of FAPE." *See id* at 1253. The formulaic approach is typified by the heading

16   on Page 4 of the FAC, which makes clear Plaintiff intends that encompasses all

17   subsequently plead "facts" in support of "all claims." FAC, Pg. 4. Plaintiff's operative

18   complaint leaves the door open for damages under the IDEA, by praying for "damages

19   including *but not limited to* damages under" the Title II and Section 504. FAC, Pg. 21

20   ¶ 4 (emphasis added). By the FAC's descriptions, all remedies sought stem from the

21   denial of meaningful access to education. FAC, Pgs. 21-22 ¶¶ 1-7. Plaintiff prays for

22   "other and further relief as this Court may deem just and proper." FAC, Pg. 22 ¶ 7.

23   Plaintiff frames each theory in a way that could not "be brought against any

24   public place of accommodation, not just a school, and by any person with a similar

25   disability, not only a student, as explained in *Fry*." *S.B*., 327 F.Supp.3d at 1253. All

26   of the legal theories Plaintiff invokes seek redress for a denial of FAPE, as none are

27   generalizable to the non-educational context. Plaintiff's theories do not pertain to

28   accommodations that would generally be made available outside of an educational

institution. No other public institution would offer a one-on-one teaching aide trained in Advanced Behavioral Analysis, nor any of the other supports and services at issue in this legal dispute. *See S.B.*, 327 F.Supp.3d at 1253. The FAC makes this plain. FAC ¶ 83 ("schools are required to provide a Free Appropriate Public Education"). Likewise, given the "extreme behavior" at issue, per OAH's finding, no other public institution but a school would be legally obligated to administer behavioral supports for the benefit of attendees who engage in violent outbursts. *See e.g., J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948-949 (8th Cir. 2017) (affirming lower court's dismissal on grounds of exhaustion of claims for placing plaintiff "in physical restraints for half of the time he actually spent at Defendant's schools," as the substance of these allegations pertained to District's alleged failure to prove proper supportive services). The same reasoning applies to I.H.'s experience at Casa Pacifica. *Id.* The safety concerns of Plaintiff's experience in a "calm room" relate to the District Co-Defendant Casa Pacifica's allegedly improper responses to Plaintiff's extreme and violent behavior. FAC, Pgs. 9-10 ¶¶ 40-45. The District's legal obligations described in the FAC are thus specific and unique to the core guarantees of educational access granted to all American schoolchildren.

The District therefore respectfully submits that dismissal is proper on grounds of exhaustion, and Plaintiff must exhaust all FAPE-based theories, as typified in paragraphs ¶¶ 16, 18, 74, and 83 of the FAC, which the parties either did not actually litigate before the OAH or that Plaintiff failed to raise before the OAH in the first instance. RJN, Ex. C, at 2 (Pre-Hearing Conference Order, AR 769).

//

//

//

//

//

//

MEMORANDUM OF POINTS AND AUTHORITIES

## V.     <u>CONCLUSION</u>

District respectfully requests this Court dismiss with prejudice Plaintiff's second and third causes of action, on grounds of issue preclusion. In the alternative, on grounds of failed exhaustion, the District seeks dismissal of the same causes of action.

Dated: July 15, 2019                    GARCIA HERNANDEZ SAWHNEY, LLP


                                        Respectfully Submitted,


                                        By: */s/Conor Kennedy*
                                        _____

                                            Albert A. Erkel
                                            Norma Nava Franklin
                                            Conor Kennedy
                                            *Attorneys for Defendant*
                                            OXNARD SCHOOL DISTRICT

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on July 15, 2019, I caused a true and correct copy of the foregoing **DEFENDANT OXNARD SCHOOL DISTRICT'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AND THIRD CAUSES OF ACTION IN PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** to be electronically filed with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to counsel for all parties.


Dated: July 15, 2019                    By:       */s/Conor Kennedy*